```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
UNITED BENEFIT FUND, DAVID DeLUCIA,
as fund administrator of the United
Benefit Fund, ANDREW TALAMO, as
trustee of the United Benefit Fund,
and THOMAS D. AMBROSIO, as trustee
of the United Benefit Fund,

                Plaintiffs,         MEMORANDUM & ORDER
                                    11-CV-4115(JS)(GRB)
     -against-

MAGNACARE ADMINISTRATIVE
SERVICES LLC and MAGNACARE
LLC,
                Defendants.
----------------------------------------x
APPEARANCES
For Plaintiffs:     Andrew A. Gorlick, Esq.
                    Deke W. Bond, Esq.
                    Gorlick, Kravitz & Listhaus, PC
                    17 State Street, 4th Floor
                    New York, NY 10004

For Defendants:     Daly Temchine, Esq.
                    Epstein Becker Green, P.C.
                    1227 25th Street, N.W.
                    Washington, DC 20037

                    John William Cook, Esq.
                    Epstein Becker & Green, P.C.
                    250 Park Avenue
                    New York, NY 10177
```

SEYBERT, District Judge:

Plaintiffs--an employee benefit fund, its administrator, and its trustees (collectively, the "Fund")--sued Defendants MagnaCare Administrative Services LLL and MagnaCare LLC (together, "MagnaCare") alleging a breach of fiduciary duty and other claims. MagnaCare moved to dismiss the Fund's

Complaint in part (Docket Entry 9); for the following reasons, the motion is GRANTED IN PART.

BACKGROUND

The Fund is a multi-employer employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), that provides health benefits for individual members. (Compl. ¶ 4.) MagnaCare sells access to a network of medical and diagnostic providers (the "PPO Network"). The PPO Network's participating providers fall into three categories: preferred medical providers, preferred diagnostic providers, and preferred network hospitals. (Id. ¶ 12.)

In 2006, the Fund and MagnaCare entered into a contract (the "Agreement") whereby the Fund's members would have access to the PPO Network in exchange for a per-member monthly access fee. (Id. ¶¶ 9, 12-13.) When a Fund member received services from a medical provider, the doctor would submit a claim to MagnaCare. MagnaCare would "re-price" the claim and forward the re-priced claim to the Fund so that the Fund could pay the doctor directly. (Id. ¶ 14.) The arrangement was different for "diagnostic" providers. When a Fund member received services from a diagnostic provider, the Fund paid a fee (which was determined with reference to a schedule) directly to MagnaCare. MagnaCare, in turn, retained a portion of that money as a management fee and forwarded the balance directly to

2

the diagnostic provider.[1] (Id. ¶¶ 15.) The management fee was different than the monthly fee that the Fund paid so that its members could access the PPO Network.

In March 2011, the Fund notified MagnaCare that it intended to terminate the Agreement in accordance with the contract's termination provisions. (See id. ¶ 24.) In May and June 2011, the Fund asked MagnaCare for copies of all bills that had been submitted for payment, the amount MagnaCare paid in response to those bills, and the amount charged to the Fund for each of those bills. MagnaCare refused to provide this information. Additionally, in May 2011, following the Fund's notification that it was cancelling the contract, MagnaCare stopped processing and re-pricing claims for the Fund despite a contractual obligation to do so during the Agreement's ninety-day termination notice period. (See id. ¶¶ 25-31.)

## DISCUSSION

The Fund asserts claims for: (1) breach of fiduciary duty; (2) breach of contract; (3) fraud; (4) unjust enrichment; and (5) injunctive relief. MagnaCare moves to dismiss all but the breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The Fund had no way of knowing how much of its diagnostic fee went towards paying the provider versus how much MagnaCare retained as its fee.

3

I. Legal Standard Governing Motions to Dismiss

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

II. Application

The Court addresses the relevant claims in turn.

　A. Breach of Fiduciary Duty

MagnaCare argues that it was not a fiduciary of the Fund and thus owed it no duty. The Court agrees. For the purposes of this motion, an ERISA fiduciary is one who

4

"exercises any discretionary authority or discretionary control respecting management of such plan," "exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

In this case, the question turns on whether the portion of the scheduled diagnostic fee that MagnaCare retained as its management fee was a plan asset. (See Pls. Opp. 9.) The Fund argues that it was, and it relies on Metzler v. Solidarity of Labor Organizations Health & Welfare Fund, No. 95-CV-7247, 1998 WL 477964 (S.D.N.Y. Aug. 14, 1998) aff'd sub nom. Herman v. Goldstein, 224 F.3d 128 (2d Cir. 2000). In Metzler, the district court applied a two part test for determining whether something is a plan asset under ERISA: "(1) a documentary approach, looking to the documents governing the relationship between the Fund and the employers as the foundation for determining whether the item at issue is an asset of the plan," id. at *5; and "(2) a functional approach, assessing whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries," (id. (internal quotation marks omitted)). The court concluded that the defendant, MEDCO, was a fiduciary under either test. Under the documentary approach, the court

5

explained that under the relevant trust agreement and other contracts, contributions to the trust were defined to include MEDCO's service fee.  Id. at *6.  Under the functional approach, the court found that MEDCO (who, as relevant here, had discretion to set employers' contributions and then retained the portion that was not used for health benefits or other expenses as its fee) profited at the expense of health plan beneficiaries.  Id. at *6-7.

The Second Circuit affirmed, focusing on the district court's documentary, not functional, analysis.  It found that the assets at issue were not plan assets "substantially for the reasons stated" in the district court's order "analyzing the terms of the documents governing the Fund."  Herman, 224 F.3d at 129.  Thus, the contractual language was a critical issue in that case.  Here, in contrast, the Fund has not alleged any contractual basis for considering the scheduled diagnostic fee as a plan asset.  And, in fact, the agreement between the Fund and MagnaCare provides that the diagnostic fees "shall not be considered for any purposes as Health Plan assets."[2]  (Agreement, Attachment A § 1.3.3.)  Moreover, the Fund has not alleged that it was entitled (even on a contingent basis) to the return of any portion of the diagnostic fees it paid MagnaCare--which

---

[2] The agreement also provides that "[i]n determining diagnostic payment, MagnaCare shall be performing [a] ministerial and not a discretionary function."  (Agreement, Attachment A § 1.3.3.)

further distinguishes this case from Metzler, see Metzler, 1998 WL 477964, at *3 (explaining that MEDCO accepted lump contributions from participating employers and then forwarded a portion of that money to the fund)--or that it was contingently liable to a diagnostic provider if MagnaCare failed to satisfy its obligation to the provider directly. In short, the Fund has not plausibly alleged that the diagnostic fees retained their character as fund assets once they were paid to MagnaCare.

Accordingly, the breach of fiduciary duty claim is dismissed. The Fund will have an opportunity to amend its Complaint to correct, if it can, the shortcomings described above.

B. Fraud

The Fund's fraud claim is dismissed for failure to plausibly plead reasonable reliance. Under New York law, "[t]he elements of a cause of action sounding in fraud are a material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages." Circle Assocs., L.P. v. Starlight Props., Inc., --- N.Y.S.2d ----, 2012 WL 3324289, at *1-2, 2012 N.Y. Slip Op. 05953 (2d Dep't Aug. 15, 2012) (quoting Introna v. Huntington Learning Ctrs., Inc., 78 A.D.3d 896, 898, 911 N.Y.S.2d 442 (2d Dep't 2010)). According to the Fund, MagnaCare committed fraud by (a) telling

7

participating providers that active Fund members were no longer active in the plan and then (b) continuing to accept fees from the Fund on behalf of those supposedly inactive members. (Pl. Opp. 13.) This theory offers no hint why the Fund would continue to pay money on behalf of plan members whom MagnaCare was falsely telling providers were no longer active. Thus, the Fund cannot be said to have reasonably relied on MagnaCare's alleged misstatements to providers.

The Fund's fraudulent concealment claim is also dismissed. Because MagnaCare is not plausibly alleged to have been a fiduciary, it had no duty to disclose the billing information that the Fund requested. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006).

C. Unjust Enrichment

The Fund's unjust enrichment claim is also dismissed. Beyond a fiduciary obligation (which the Court already rejected) and a contract obligation (which is not the subject of this motion), the Fund has not alleged an obligation running from MagnaCare to the Fund that would support an independent unjust enrichment claim. Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 944 N.Y.S.2d 732 (2012).

D. Injunctive Relief

MagnaCare also seeks to dismiss the Fund's claim for injunctive relief, which would essentially enjoin MagnaCare to

process the Fund's claims in accordance with the parties' agreement. This request is tied closely with the Fund's breach of contract claim and, inasmuch as that claim is not a subject of the pending motion, dismissing the Fund's injunction request would be premature. See <u>Fox Ins. Co. v. Envision Pharm. Holdings, Inc.</u>, No. 09-CV-0237, 2009 WL 790312, at *7 (E.D.N.Y. Mar. 23, 2009) (denying preliminary injunction but noting that although injunctive relief is unusual in contract cases, it may be appropriate in certain cases).[3]

## CONCLUSION

For the foregoing reasons, MagnaCare's motion to dismiss the Complaint in part is GRANTED IN PART AND DENIED IN PART. The Fund may file an Amended Complaint within twenty-one days from the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: August __27__, 2012
       Central Islip, New York

---

[3] The Court notes that the ninety-day termination notice period has run and thus it presumes the Agreement is likely no longer operative. Nevertheless, the Court refrains from dismissing this portion of the Fund's case at this time.